## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| M. ROSS ARNEL, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>MADISON SQUARE GARDEN ENTERTAINMENT CORP (N/K/A Sphere Entertainment Co.).,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, M. Ross Arnel, by his attorneys, brings this action individually and on behalf of all others similarly situated (the "Class") against Defendant, Madison Square Garden Entertainment Corp. (n/k/a Sphere Entertainment Co.)("Defendant" or "MSG"). Plaintiff makes the following allegations (except those allegations as to Plaintiff or his attorneys, which are based on personal knowledge), based upon an investigation that is reasonable under the circumstances, which allegations are likely to have evidentiary support after a reasonable opportunity for further investigation and/or discovery.

### INTRODUCTION

1.      This class action arises out of Defendant's possession, use in trade, and its profiting from the use of Plaintiff's biometric identifier information ("biometric identifier information") and that of class members (the "Class", "Class Members").

2.      Defendant owns well known entertainment venues, including Madison Square Garden (the "Garden"), Radio City Music Hall, the Hulu Theater, and the Beacon Theater. The

Garden is the home of the New York Knicks, Rangers, professional boxing and college basketball teams.

3.     Defendant has publicly admitted that it has been using facial recognition technology in its venues since at least 2018, as part of a number of security procedures.

4.     In fact, Defendant has admitted that it first tried using Clearview AI, a database of potentially illegally scrapped photographs of persons worldwide, which uses facial vectoring or geometry in order to identify individuals.

5.     Although MSG has indicated that it only "demoed" the product in about 2020, there is little question that it presently uses facial recognition technology in its venues, in particular the Garden and Radio City, in order to identify persons which it deems may be a security risk, among other things.

6.     MSG officials have been quoted as stating that such technology is "a useful and widely used safety tool at many sports and entertainment venues". http://www.nytimes.com/2022/12/22/nyregion/madison-square-garden-facial-recognition.html.

7.     In late 2022, it was reported that MSG was using facial recognition technology to ban certain attorneys from patronizing MSG venues because of their involvement or the involvement of their firms in litigation against MSG or the Garden.

8.     It was subsequently disclosed that MSG had a policy, adopted in mid-2022, of banning an attorney whose firm was involved in litigation against MSG or the Garden  (the "Attorney Ban").

9.     The Attorney Ban, which was adopted in July 2022, states in summary that MSG and any of its venues reserves the right to exclude any litigation counsel who represents parties adverse to MSG and its related companies.

10.     James Dolan, the chief executive officer and executive chairman of MSG, has admitted that MSG uses facial recognition technology to, among other things, ban those on its "list".  As Dolan was quoted, "[b]asically, anytime that you go out in public, you're on camera . . .what facial recognition does is looks at . . .recognizes your face, and says you know, you are someone who's on this list."   https://www.cnn.com/2023/01/26/tech/msg-ceo-facial-recognition/index.html. The list, at minimum, presumably includes any attorney associated with a law firm representing a party in litigation.

11.     MSG uses facial recognition technology in order to profit by increasing its security measures and for its *in terrorem* effect in dissuading potential litigants and others that it deems undesirable so that it can boast of its safety, in order to keep up its profit margin and appeal to the public.

12.     As part of its appeal and in order to induce patronage, MSG specifically touts its "commitment to your health & safety" on its website.  https://www.msg.com/plan-your-visit.

13.     While its website states that "[a]t MSG, we place the safety and security of our guests above all else" and that "we continuously assess and upgrade security measures across all of our venues", it omits any mention that MSG is collecting or using biometric identifier information or using facial recognition technology to increase its patronage. *Id*.

14.     Facial recognition technology uses sensitive personal information that is irreplaceable if stolen or taken.   It relies on the use of facial geometry or, biometric identifier information as that term is used in N.Y.C. Admin Code §§2-1201-1205 (the "NYC Biometric Law"), which, among other things prohibits the use of facial geometry by commercial establishments for sale or to "otherwise profit from the transaction of biometric identifier information."  Section 22-1202 b.

3

15.    Facial recognition technology works through the use of a data base of faces which have been scanned from various sources, in most cases, social media platforms.

16.    Facial recognition then uses computer generated filters to transform those facial images into numerical expressions that can be compared to scans of live persons to determine their similarity. The filters are usually generated by using deep "learning" which uses deep neural networks to process data.

17.    Once a person enters a particular venue, his face is scanned by the technology which then compares his face and facial geometry with those on file in the database in order to make a match and to identify that person.

18.    Often other personal information is connected to the individual's facial geometry or vectors, such as their names, ages, addresses, social media accounts, information contained in their social media accounts or personal information gleaned from their social media accounts and other sources.

19.    By using facial recognition technology in order to increase security and ban certain persons from attendance at MSG and its other venues, and in order to eliminate or to discourage litigation and other vexatious conduct, MSG has used biometric identifier information, including that of Plaintiff and Class Members, for "profit" and has effectively profited from "the transaction of biometric identifier information" in violation of Section 220-1202 b. of the NYC Biometric Law.

20.    MSG has further violated N.Y. Civil Rights L. §§ 50-51, in that it has engaged in the nonconsensual use of Plaintiff's image, and that of Class Members, for purposes of trade or for use in a manner that would draw trade to the firm by using a database containing their images, and by scanning them and comparing to those images and the facial geometry in its database.

21.     In order to effect the Attorney Ban and other "security" measures presumably in the interests and for the profit of MSG, Defendant has employed facial recognition technology, using a database that includes Plaintiff's photograph and relevant facial vectors or geometry and that of Class Members.

22.     Upon information and belief, Plaintiff had his image scanned and compared to that on file through the use of facial geometry or facial vectors when he attended a Billy Joel concert at the Garden on October 9, 2022.

23.     Plaintiff was never asked for his consent to use his image as part of any database which was subsequently used by Defendant for security purposes or as part of a facial recognition data base.

24.     In using facial recognition technology, and facial geometry, Defendant failed to comply with its duties under both New York City and New York state law.

25.     Plaintiff brings this action to prevent Defendant from further violating the privacy rights of all persons who have attended events at MSG or any related MSG venue, and who have had their biometric identifier information collected and used by MSG's facial recognition technology system.

26.     Plaintiff seeks actual damages, statutory monetary damage pursuant to N.Y.C. Admin. Code §§22-1203 for each of MSG's negligent, intentional and/or reckless violations of N.Y.C. Admin. Code §§22-1202 b., and damages pursuant to N.Y. Civ. Rights §§50 and 51.

27.     Plaintiff further seeks injunctive relief to further prohibit MSG from further violations of NYC Biometric Law and other statutes.

## JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this lawsuit under the Class Action Fairness Act, 28 U.S.C. §1332(d), because: (1) the proposed class consists of over 100 members;

(2) the parties are minimally diverse, as members of the class of plaintiffs are citizens of a state different from Defendant; and (3) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs.

29.     This Court has personal jurisdiction over Defendant because MSG owns and operates entertainment venues in New York, NY, and committed tortious acts within New York City and State.  Moreover, Defendant's principal place of business is located in New York City.

30.     Venue is proper in this District under 28 U.S.C. §1391(b)(2) because a substantial part of the acts or omissions giving rise to the claims occurred here and because Defendant maintains a principal place of business in this District.

## PARTIES

31.     Plaintiff M. Ross Arnel is a citizen and resident of New Jersey.

32.     Plaintiff attended a Billy Joel concert on October 9, 2022 at MSG, during which time, Defendant collected and used Plaintiff's facial geometry in accordance with its security protocols.  Plaintiff did not provide Defendant with consent, written or otherwise, prior to Defendant's collection and use of his biometric identifier information, nor was Plaintiff made aware of the fact that Defendant was using facial recognition technology and that in accordance with that technology, Defendant was collecting and using Plaintiff's facial geometry.

33.     Defendant Madison Square Garden Entertainment Corp. is a Delaware corporation with a principal place of business at Two Penn Plaza, New York, NY.

## FACTUAL ALLEGATIONS

## I.     THE NEW YORK CITY BIOMETRIC LAW

34.     The New York City Council amended the Administrative Law to include the New York Biometric Law.  The Law had been under discussion since 2019, and the City Council believed it to be so important that it continued to push it through even during the Pandemic.

35.     As disclosed in the City Council's Report dated December 10, 2020 (the "Report"), the City Council was particularly concerned with the expanding use of facial recognition technology. As the City Council explained in the Report, facial recognition technology raised particular concerns as "[w]ithin a minute, millions of faceprints can be compared to a database of stored faceprints."  Report at 3-4.

36.     The City Council recognized the danger of using facial recognition technology at entertainment venues, and explicitly noted its use by Madison Square Garden, which like other venues used it under the guise that such technology is necessary for "security and operational purposes to determine who may enter the premises."  *Id*. at 7.   The City Council noted, however, that "[i]t is unclear how the data collected through facial recognition technology is managed and stored by entertainment venues," and that "[t]echnology experts warn that this data could be collected and sold to third parties for marketing purposes without the consent of the consumers."  *Id*. at 8.

37.     The City Council further raised concerns that this information is stored in large databases that could be hacked at any time, which is especially dangerous as these databases could be used to "identify almost any person who goes out into public places, surreptitiously or otherwise, tracking movement, location and conduct".  *Id*. at 12.

38.     The bill thus was directed at regulating the increased collection and use of biometric identifier information, and in particular facial recognition technology, that "commercial establishments [use] to track consumer activity," and at regulating the use by any commercial

establishments, including places of entertainment, if the "establishment 'collects, retains, converts, stores or shares' biometric identifiers used to identify individuals, such as scans of customers faces, irises, or fingerprints.'" *Id*. at 21.

39.     The bill makes it unlawful, among other things, for those commercial establishments "'to sell, lease, trade, share in exchange for anything of value or otherwise profit' from the exchange of customer's biometric identifier information". *Id*.

40.     Similar to the Illinois Biometric Protection Act, the Law then provides a private right of action and statutory damages for each violation.

## II.   MSG PROFITS FROM THE USE OF FACIAL RECOGNITION TECHNOLOGY

41.     MSG has deployed facial recognition technology to collect, use, and share biometric data for profit-motivated, commercial purposes in violation of the consumer privacy rights conferred by NYC Biometrics Law and the NY Privacy Law.

42.     MSG utilizes this system to collect biometric identification information from every consumer who attends an event at, or otherwise patronizes, the MSG Venues.  As part of MSG's facial recognition technology system and related policies, MSG also maintains a database of biometric data associated with persons that MSG has banned from its venues.  When a person enters an MSG Venue, that person's biometric data is collected and analyzed against the database, including for banned persons for a potential match.

43.     In order for MSG to utilize its facial recognition technology system to identify and remove banned or other individuals from MSG Venues, two categories of biometric data are collected, analyzed, and/or maintained by the system.  First, MSG maintains a database of biometric data associated with banned persons, against which all consumer biometric data it collects is analyzed.  Second, MSG collects biometric data associated with any consumer that

enters the MSG Venues so that it can systematically identify any such consumer that is a banned person.

44.     MSG has publicly admitted that it uses facial recognition technology as part of its security measures to determine who it will allow into its venues, and to effect what Dolan has called its "list" of persons who are banned from the venue for various reasons including to discourage and undermine litigation.

45.     MSG specially touts the safety of its venues on its website in order to induce customers to purchase tickets to its events, and to increase its patronage.  This is particularly important as some of its venues, in particular, the Garden, are near transportation hubs which may not be especially safe.

46.     Moreover, as noted in the Report, certain of the performers appearing at its venues request that the venue use facial recognition technology in order to prevent concert stalkers, such that employing facial recognition technology, such that use of the technology specifically affects the venue's bottom line and its ability to secure certain talent and performers.

47.     Moreover, MSG uses facial recognition technology to thwart or discourage future or ongoing lawsuits, by using the technology to effect its Attorney Ban providing MSG with a direct profit motive and pecuniary benefit.

48.     The media has reported on a number of these instances, as the affected attorneys have spoken out about their experiences:

> a   A New Jersey mom, Kelly Conlon, an associate at David, Saperstein & Salomon, chaperoned her daughter's Girl Scouts field trip to Radio City Music Hall to see the Rockettes Christmas Special in November 2022.  Ms. Conlon was identified by facial recognition technology and removed by security.  Ms. Conlon had no actual role in any lawsuit against MSG, other than being employed by a law firm that is counsel of record in a lawsuit against MSG.

b    Benjamin Pinczewski, a 61-year-old personal injury and civil rights lawyer, was stopped in January 2023 by two MSG security guards after passing through the metal detector at Madison Square Garden.  He explained that he was not working on any lawsuit against MSG, but he was removed by security because he works for a firm, Elefterakis, Elefterakis & Panek that had filed a lawsuit against MSG.

c    A lawyer attending a concert at Madison Square Garden in October 2022 was stopped by security who demanded her identification, proceeded to advise her that she was identified by facial recognition software, then ejected her from Madison Square Garden.  The lawyer was not involved in MSG litigation and was not aware of the ban before attempting to attend the concert.

d    Barbara Hart, an attorney with Grant & Eisenhofer, was stopped when she entered the Garden for a concert to celebrate her anniversary, because her firm was involved in securities litigation involving MSG.

e    Fourteen days after filing a complaint in September 2022 against MSG on behalf of consumers alleging violations of New York Arts and Cultural Affairs Law by MSG, MSG revoked the Knicks season tickets of attorney of record, Larry Kutcher.

f    Nicolette Landi, an attorney with the firm of Burns & Harris, attempted to attend a Mariah Carey Christmas concert in December 2022, but was denied entry and asked to leave MSG because her firm represents a plaintiff against MSG.

g    Attorney Alexis Majano was entering a Knicks game in November 2022 with friends when he was stopped by security, asked whether he worked at the firm of Sahn Ward Braff Koblenz, and ejected from the game

49.    The Attorney Ban has been the subject of criticism by government officials, including New York Attorney General Letticia James.  In a January 24, 2023 letter, General James stated that the Ban "may violate the New York Civil rights Law and other city, state, and federal laws prohibiting discrimination and for retaliation for engaging in protected activity", explaining that such a ban may discourage attorneys from taking on legitimate cases such as sexual harassment and employment discrimination claims.

50.     This sentiment was echoed by Representative Jerrold Nadler in a letter by lawmakers in January 2023, which stated that they were "gravely concerned that MSG Entertainment is using facial recognition technology against its perceived legal enemies" and that doing so would "potentially chill free speech and access to the courts."

51.     State Senator Liz Kruger was quoted as stating that "MSG's use of facial recognition technology to retaliate against employees of law firms engaged in litigation against them is deeply concerning.  It is an unacceptable invasion of the privacy of all their patrons . . . ."

52.     Since that time, the State Liquor Authority ("SLA") and MSG have been locked in litigation, with the SLA indicating that it will consider pulling MSG's liquor license if it continues its Attorney Ban through the use of facial recognition technology.

53.     Nothing on MSG's website, however, informs patrons that MSG uses facial recognition technology nor that their faces will be scanned and reduced to facial geometry and compared to a data base containing millions of other scanned faces similarly reduced to facial geometry or numerical representations, when they enter the venue.  Upon information and belief, none of the MSG venues displayed appropriate signage under the New York Biometric Law.

54.     Moreover, MSG has directly benefitted and profited from the use of facial recognition technology, including using it to limit or thwart current or future litigation and to increase patronage by touting its commitment to security.

III.    **DEFENDANT VIOLATED NEW YORK CITY'S BIOMETRIC LAW AND NEW YORK CIVIL RIGHTS LAW**

55.     MSG's use of facial recognition-enabled technology at its various venues, was used to increase profitability, thwart or hinder current and actual litigation, and to attract patrons by touting its commitment to their safety.  Its actions violate both New York Biometric Law and New York State Civil Rights Law.

56.     Under the New York Biometric Law, it is unlawful for an entertainment venue: (1) to collect, retain, convert, store or share biometric identifier information of customers without displaying the requisite signage, or (2) to sell, trade, share in exchange for anything of value or otherwise profit from the transaction of biometric identifier information.

57.     MSG collected, retained, stored and used biometric identifier information, including Plaintiff's likeness and his facial geometry, and that of the Class.

58.     MSG did so in order to profit by being able to tout its venues as secure, engage certain performers, and thwart and/or discourage current and future litigation, which actions directly affected its bottom line and profitability.

59.     MSG further violated New York Civil Rights Law, §§ 50-51. MSG used Plaintiff's likeness, picture and biometric identifier information for purposes of trade and to draw trade to it, without Plaintiff's consent and to make a profit.

## CLASS ALLEGATIONS

60.     Class Definition:  Plaintiff brings this action pursuant to Fed. R. Civ. P. 23 ("Rule 23") and seek class certification of all claims for relief herein on behalf of a class defined as follows:

> All individuals who patronized an MSG venue in New York City and had their biometric identifier information collected by Defendant.

The following are excluded from the Class:  (1) any Judge presiding over this action and members of his or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant has a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; and (5) the legal representatives, successors, and assigns of any such excluded persons.

61.     Numerosity:  Members of the Class are so numerous that their individual joinder is impracticable.  Upon information and belief, members of the Class number in the thousands.  The precise size of the Class and Class Members' identities are unknown to Plaintiff at this time but may be determined through discovery.  Further, the size and relatively modest value of the claims of the individual members of the Class renders joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

62.     Typicality:  Plaintiff's claims are typical of the claims of the Class Members because Plaintiff had his Biometric Data collected, used, and profited from by MSG, and therefore, Plaintiff's claims arise from the same common course of conduct giving rise to the claims of the members of the Class and the relief sought is common to the Class.

63.     Commonality and Predominance:  Common and well-defined questions of fact and law exist as to all members of the Class and predominate over any questions affecting only individual class members.  These common legal and factual questions include, but are not limited to, the following:

    a)  whether MSG collected or otherwise obtained Plaintiff's and the Class's biometric identifier information;

    b)  whether MSG profited from the collection and use of Plaintiff's biometric identifier information;

    c)   whether MSG used Plaintiff's and the Class' likeness;

    d)  Whether MSG used Plaintiff's and the Class' likeness for purposes of trade;

    e)  Whether MSG violated the New York Biometric Law and/or New York Civil Rights Law §§ 50-51;

    f)  whether MSG's violations were committed intentionally, recklessly, or negligently; and

13

g) whether Plaintiff and members of the Class sustained damages as a result of MSG's activities and practices referenced above, and, if so, in what amount.

64.     Adequate Representation: Plaintiff has retained competent counsel experienced in prosecuting complex consumer class actions.  Plaintiff and his counsel are committed to vigorously prosecuting this class action.  Moreover, Plaintiff and his counsel can fairly and adequately represent and protect the interests of the Class because his interests do not conflict with the interests of the Class that Plaintiff seeks to represent.  Plaintiff has raised viable statutory claims of the type reasonably expected to be raised by members of the Class and will vigorously pursue those claims.  If necessary, Plaintiff may seek leave of this Court to amend this Class Action Complaint to include additional Class representatives to represent the Class or additional claims as may be appropriate.

65.     Superiority: A class action is superior to other available methods for the fair and efficient adjudication of this controversy because individual litigation of the claims of all Class Members is impracticable.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Moreover, even if every member of the Class could afford to pursue individual litigation, the Court system could not.  Individual litigation of numerous cases would be unduly burdensome to the courts.  Individualized litigation would also present the potential for inconsistent or contradictory judgments, and it would magnify the delay and expense to all parties and to the court system resulting from multiple trials of the same factual issues.  By contrast, the maintenance of this action as a class action, with respect to some or all of the issues presented herein, presents few management difficulties, conserves the resources of the parties and of the court system, and protects the rights of each member of the Class.  Class treatment of the liability

issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.  Plaintiff anticipates no difficulty in the management of this action as a class action.  Class-wide relief is essential to compel compliance with the NYC Biometric Law..

## COUNT I

**Violation of New York City Biometric Law**
**N.Y.C. Admin. Code § 22-1202(b)**

66.     Plaintiff restates and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

67.     Defendant owns and operates the MSG venues, which are commercial establishments subject to N.Y.C. Admin Code § 22-1202.

68.     Defendant employs a facial recognition technology system at the MSG venues, which collects, retains, converts, analyzes, stores, and/or shares biometric identifier information of persons who enter the MSG venues, including Plaintiff and members of the proposed Class.

69.     Defendant has used, shared, transferred, or otherwise transacted in biometric identifier information associated with consumers, such as Plaintiff and members of the proposed Class, including by sharing with or transferring such biometric data to at least one third-party, in order to implement and carry out the Attorney Ban.

70.     Defendant profits from the use of facial recognition technology and the Attorney Ban by deriving pecuniary benefits including but not limited to deterring litigation, among financial and other benefits.

71.     The use of facial recognition technology for profit violates N.Y.C. Admin Code § 22-1202 b.

72.     Defendant has acted willfully and recklessly, or, alternatively, negligently, in profiting from using, sharing, or transacting in consumer biometric identifier information in order to profit.

73.     Plaintiff, and members of the proposed Class, have been damaged by Defendant and are entitled to actual and statutory damages, as provided by N.Y.C. Admin Code § 22-1203, for each of Defendant's violations of N.Y.C. Admin Code § 22-1202 b.

### COUNT II

**Violation of New York Civil Rights Law Right of Privacy**
**N.Y. Civ. Rights §§ 50, 51**

74.     Plaintiff restates and reallege the allegations in each of the preceding paragraphs as if fully set forth herein.

75.     Defendant employs a facial recognition technology system at the MSG venues, which collects, retains, converts, analyzes, stores, and/or shares biometric identifier information, including photographic images, of persons who enter the MSG Venues, including Plaintiff and the members of the proposed Class.

76.     Defendant uses the photographic images it obtains through its facial recognition technology system for commercial purposes and for trade, including to implement and carry out the Attorney Ban.

77.     The Attorney Ban is implemented and carried out by Defendant for trade purposes, in furtherance of Defendant's own business purposes and for Defendant's own pecuniary benefit.

78.     Plaintiff and members of the proposed Class did not provide written consent to Defendant's uses of its photographic images for Defendant's trade purposes.

79.     Defendant has accordingly violated Plaintiffs' and the Class's Right to Privacy, as provided by N.Y. Civ. Rights § 50.

80.     Plaintiff, and members of the proposed Class, have suffered actual damages as a result of Defendant's violations of N.Y. Civ. Rights § 50, and are entitled to damages as provided by N.Y. Civ. Rights § 51.

## COUNT III

### Unjust Enrichment
### (In the Alternative to Count II)

81.     Plaintiff restates and realleges the allegations in each of the preceding paragraphs as if fully set forth herein.

82.     Defendant received benefits from Plaintiff and Class members and unjustly retained those benefits at their expense.

83.     Defendant received benefits from Plaintiff and Class members in the form of their highly valuable data, specifically biometric data, that Defendant wrongfully obtained from Plaintiffs and Class members for unlawful purposes.

84.     Defendant collected, stored, and used this data for its own gain, providing Defendant with economic, intangible, and other benefits, including highly valuable data which it used to implement the Attorney Ban and to increase patronage.

85.     The benefits that Defendant derived from Plaintiff and Class members rightly belongs to Plaintiff and Class members. It is against equity and good conscience for Defendant to be permitted to retain any of the profit or other benefits it derived from the unfair and unconscionable methods, acts, and practices alleged in this Complaint.

## VII.    PRAYER FOR RELIEF

94.     WHEREFORE, Plaintiff prays for judgment as follows:

   A.    For an Order certifying this Action as a class action and appointing Plaintiff as the class representative, and his counsel as class counsel;

B.    For statutory damages awardable under N.Y.C. Admin Code § 22-1203, for Defendant's negligent, intentional and/or reckless violations of N.Y.C. Admin Code § 22-1202(b) with respect to each Class member;

C.    For actual and exemplary damages, including pursuant to NY Civ. Rights § 51, for Defendant's violations of the privacy rights of each Class member, as provided by NY Civ. Rights § 50;

D.    For equitable relief;

E.    For attorneys' fees, costs, including as provided by N.Y.C. Admin Code § 22-1203;

F.    For equitable and injunctive relief ordering Defendant to cease the unlawful practices described herein, including Defendant's continued violations of N.Y.C. Admin Code § 22-1202(b) and NY Civ. Rights §§ 50, 51;

G.    All other damages to be awarded in an amount to be determined as allowable by law, including pre and post-judgment interest; and

H.    Such other and further relief as this Court may deem just and proper.

## VIII. JURY TRIAL DEMAND

95.    Plaintiff hereby demands a jury trial for all claims so triable.

Dated:  June 28, 2023

By: _____

Gary S. Graifman
Daniel C.  Edelman
**KANTROWITZ, GOLDHAMER & GRAIFMAN, P.C.**
16 Squadron Boulevard, Suite 106
New City, New York 10952


Lynda J. Grant

**THE GRANT LAW FIRM, PLLC**
521 Fifth Avenue, 17th FloorNew York, NY 10175 Phone: (212) 292-4441
Fax: (212) 292-4442

lgrant@grantfirm.com

Phone: (845) 356-2570
Fax: (845) 356-4335
ggraifman@kgglaw.com
dedelman@kgglaw.com

***Attorneys For Plaintiff And The Proposed
Class***